The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attendance, for the Court is now sitting. God save the United States and this Honorable Court. Let's be seated. Welcome to the Court of Appeals. We have just one case to hear this afternoon, and the panel is ready to hear from the affluent. Please, the Court. Good afternoon. My name is Press Millen from the Womble firm. I represent the plaintiffs in this matter, which I'll refer to as the challengers. We're appreciative of the Court's willingness to hear this appeal on an expedited basis. North Carolina would not be a state today if it had not explicitly agreed to enforce Section 3 of the 14th Amendment. On June 25, 1868… Let's go to the issues. Yes. Let's go to the issues. You can all imagine, this panel has thoroughly read this record, and you're very familiar with the facts. Let's go straight to the… I know you have some preliminary things to deal with it. Let's deal with it. The preliminary thing, and I think this really kind of overarches, in some ways, all of the arguments here, is that in 1868, Congress, by a two-thirds majority in each house and over the objection of then-President Andrew Johnson, passed 15 Statute 73, which was entitled, An Act to Admit the States of North Carolina and Six Others. That goes to the merits. Tell me about the preliminary issues on intervention and standing. With respect to… We're going to get to the merits. We're certainly going to do that. I'll start with standing, then, Your Honor. I think the issue of standing could not be more clear. The challengers, as voters within the district, are the only persons under the North Carolina statute who can initiate a challenge. The State Board itself cannot initiate a challenge, only voters within the district. But for these challengers… Any voters can, right? And once one voter does, other voters can join. That's correct. It's not unique to these voters in particular. Not unique to these voters in particular, but as voters within the district of the candidate, and that could be any kind of candidate, they are the ones who have the power. The district court recognized that it was the challenges of these particular challengers that provided the court with Mr. Cawthorn's own Article III standing, as well as rightness for the ruling. Let me just make sure we set the record straight. You have an initial matter that comes up in January, as I understand, where the challengers bring this matter in North Carolina, ostensibly to prevent the congressman from running because of his participation in what they say is an insurrection. That goes along. All of a sudden, it's fast-forwarding and saying, that's stated. And then that district actually gets changed. In the intervening time, Mr. Cawthorn files a federal action. And I guess the basis is the January action. That's correct. January action goes away. And so the court says they don't have standing. So there is a question in my mind is, well, why does Mr. Cawthorn have standing if the January action is going away, even though he subsequently files on a different district? Standing is standing on both sides, and the basis is there. So go to that question. It is a complicated issue, and I do think it works for both parties here, the issue. So the way to think about it, just a quick tracy of sort of this is a somewhat tortured procedural history, as Your Honor noted. Mr. Cawthorn originally files in District 13, which essentially runs west from the western part of Charlotte. January, 13 voters from that district filed the candidacy challenge against him. For our purposes, the key fact here is that Polk County was part of that original District 13 in which Cawthorn had filed, and Laurel Ashton from Polk County was a January challenger. On February 4th, as is pointed out in both parties' briefs, the North Carolina map was thrown out by the North Carolina Supreme Court, the General Assembly, went back to the drawing board, came up with a new map, which was approved on February 24th. Mr. Cawthorn then filed in what is now District 11 on the new map, which basically covers the western part of the state. But like the old 13th District, Polk County was in the new 11th. And so on March 2nd, Laurel Ashton and one other District 13 voter filed new challenges against Cawthorn there. So putting everything else aside, Laurel Ashton is the constant here. And this is implicit in what you just said, but I want to just clarify. Would there be any practical problem that you can think of related to the litigation if we were to hold that Ashton was allowed to intervene without reaching the question of whether anybody else was authorized to intervene? I don't think there would be any practical problem. And in fact, I think she really is the – she is, as I said, the constant here. She filed challenges both in January and March. I'm going to ask you to help me a little bit with her interest, and I'll try to be as precise as we can because we've all spent a bunch of time on this. But the precise concern is this, is in cases like Spokio and in Summers v. Earth Island, the court indicates that a procedural right gives you standing only where it protects a concrete interest. And so we see cases where that concrete interest is financial, money. But what we don't really see is a context in which the concrete interest is a right that's held by all voters in the district, all citizens in the district. And so what I'm having a little trouble understanding is if I look through the procedural right, that is, to file this challenge, I have to find what the Supreme Court calls a concrete interest. In one instance, a concrete harm in another that's not shared by everybody. And so what is that interest that is unique to Ms. Ashton or any of the other challengers beyond the procedural right to file this proceeding? I think the unique thing that applies to her is that she filed the challenge. It was that challenge that provided Article III standing. That's the but-for cause. That's the efficient cause. But in Summers itself, right, in Summers they say, listen, we were prohibited from filing comments on the Forest Service tree issues, whatever the tree issues were in Summers, right? And so we were prevented from filing these comments. And the court says that you have to have a concrete interest underlying it. And their concrete interest there was diffuse. It wasn't different for them than it was every other person. The concrete interest here, Your Honor, is that the injunction here enjoins solely the challenges lodged by these challengers. But that's a procedural right, right? They have a procedural right to a challenge, right? And a procedural right standing alone doesn't do anything is my concern. I think it goes beyond a procedural right. It is a right that… How? Tell me how. Because it's a right that is enshrined in the North Carolina statutes. They are the only persons, these voters, and these voters who, in fact, chose to do so here, who can lodge a candidacy challenge. The fact that there are other voters who could have but didn't I don't think dissipates their concrete interest. They are the ones who initiated it. They are the ones who can exclusively initiate it. They are the ones who are explicitly their challengers. But it's only procedural. I'll stop, and I'll let you go on something else. But just because it causes me consternation, I want to give you at least one more chance to answer it. That is a procedural right, right? It's like N. Summers commenting on notice-and-comment rulemaking, right? That's a procedural right, a procedural right to raise a challenge. It's not a substantive right. Well, I would argue that it is substantive that once there is a procedural right that potentially adheres in any voter. But once that challenge is made, that goes beyond procedural. And once that challenge is enjoined, I think you've got something that is concrete, particularized, and individualized. Can you give me what's the best case that tells me that that's not a procedural right but is, in fact, a concrete harm? I think that when you look at the cases that essentially recognize the rights of voters in these types of elections cases, sometimes it's voters who want their candidates on the ballot. In this case, it's voters who would prefer to see whether this candidate should be off the ballot. All right, last question, and then I'll turn it back. I'll pause you. I get it if you want your candidate to be on the ballot, right? And so the Fourth Circuit has so found before Lujan. But we said that if you're trying to get your candidate on, but that's because that's the person you want to vote for, and you want your vote for that person to matter. But it's a little harder in it in the negative where it's not the person your client wants to work for or vote for. But instead, it's like more diffuse, right, because they're not trying to get that person on. They're trying to get it off, which indirectly might increase votes for whoever their preferred candidate is. I don't see it that way, Your Honor. And the reason I don't is because I think you've sort of got this intertextual First Amendment right to have your candidate or your preferred candidate on the ballot. This is an explicit constitutional right under Section 3 of the 14th Amendment that these challengers are trying to assert in the context of the North Carolina statute that gives them this right to do so. So I think Judge Richardson poses excellent questions, particularly with regard to the challenger's right to act in the state court. But I really don't understand why the state court can't handle those questions. What's more interesting here is where is that private right of action for Mr. Cawthon to file in this action here? Because if it arises under 1983, something new is getting ready to happen now. Because 1983 does not give you an independent substantive right to bring in a cause of action. It has to come from somewhere other than just federal law. I would agree with that. I think his questions are great. But I really want to, and I expect Mr. Box will go there to address it from the perspective of Mr. Cawthon in terms of this federal action. Where is that private right of action here? But at this point in time, given the time we have, and maybe my colleagues, I'm going to say we are going to relax the time here. If you know me as a judge, that almost never happens. But we're going to do it here because you guys have put a lot of time in this case and a lot of interest in it. And I know these judges are hot. You have picked one of the most brilliant panels, myself excluded, to bring this case to. False modesty only gets you so far. Let's go into what you want to talk about in addition to the merits of it on this 1872 statute. But that doesn't preclude continued conversation with the preliminary issues. I understood, Your Honor, and I'm prepared to address any of those issues, but I would like to move. Can you respond to what I think was the first part of his question? Why is there not to – Mr. Cawthon brings a 1983 action, not against the state court, but a state executive agency, right, the board, and for violating either a federal law or the federal constitution, right? We all the time hear 1983 suits against state executives. State court is totally different, right? We've got a lot of abstention concerns. But state executives, because of a belief that they are not following or will not follow the constitution, why is there not a cause of action for Mr. Cawthon in that context? Well, I think, Your Honor, and my reading of the complaint is that there were four claims that were brought forward. Three of those claims, the way I read the complaint, purport to attach to 1983. The one claim, though, that the court got to, which was the Amnesty Act of 1872 claim, that does not, as I read that complaint, purport to be brought under Section 1983. But you agree the other three are maybe not correct, right, but they're properly brought under 1983. They purport to be pleaded under 1983. I would agree with that. And I understand completely the issue. The judge didn't even get to those other three. We all are going to talk about 1872. And so far as that, that was my question as to where is that private right of action to even bring that kind of action here? I'm sure Mr. Bopp will have an answer for you. I'm sure he will. So, appreciating the relaxed time, I would like to address what I think is the heart of the case, which is the 1872 Amnesty Act and the idea that this prospectively immunized all future insurrectionists, whether living or like Cawthon, yet unborn. And, you know, obviously we've spelled out in our extensive briefing that we think the district court was wrong, based on the plain language of the statute, the context and history of the 14th Amendment in the statute, the more particular legislative history of the statute, the later congressional interpretations, and finally the logic and common sense. Most recently, and we pointed this out in our reply brief, the only other court to consider this issue, obviously not authoritative in this circuit, certainly not with respect to this court, but did agree with our analysis in the Green v. Raffensperger case, explicitly disagreed with the district court below and with Cawthon's counsel. Can I ask before you get to those points, and I obviously want my colleagues to hear those if you would like, but to sort of preview where I am, because I want your sort of pushback on it, right? So let's just hypothesize that I agree that the district court got the 1872 Act wrong, but I think they got it wrong for a different reason. I think the district court got it wrong because Article I, Section 3, prohibits him or the state board from being a judge of the qualifications of a candidate, right? And if the state board is barred from considering it, so too is the district judge because they are the sole judge. Help me understand. You don't have to develop them too much, but we haven't spent as much time on this argument. What am I missing there? Why are they not the sole judge of qualifications, and why is this not a qualification? Well, Your Honor, I think there are two constitutional provisions at play here. There's the one that Your Honor references, which is called, I think by shorthand, sort of the qualifications clause. That's Section 5. It states in part and in part, each house shall be the judge of the elections, returns, and qualifications of its own member. That's something the district court didn't even get to. That's one of those three claims. That's really not before us right now. It might come before us in the future, but I want you to go ahead and ask the question because it's before you. But it's really, and I get Judge Richard's point. I mean, if you can't do it, then how are you going to have a say? The court has to have jurisdiction to do something, and if you don't have jurisdiction, but it's a question that was not addressed below. What was addressed was 1872 solely. Right, so at best, even if we go in that direction, I think we just would have to send it back to consider that, and then maybe it would come out that way. Or we could conclude that it's a jurisdictional limitation on a federal court's authority. And that's what I would address as to why I don't believe it's a jurisdictional limitation because we have the second. I understand that. There's a separate argument about that, right? I understand that that's a separate arguable argument. But my point is we have the Fourth 1872 Act, right? There was a decision on it, and I'm positing that it's wrong because the district court exceeded its authority in addressing the qualifications of a member. And what I would say is that Section 4 of Article I of the Constitution, the Elections Clause, which gives to the state legislatures the authority with respect to time, place, and manner of holding elections for senators and representatives, unless Congress changes those, that that, at least from a jurisdictional standpoint, would allow North Carolina to do this. Explain how we get Cook and U.S. term limits, right? Because when we're talking about qualifications, they're distinct from manner and means, right? And that's what Cook and term limits and Stoyer v. Brown, they draw a line. We can debate about exactly how to draw that line. But what we can say about it seems like to me Section 3 of the 14th Amendment is it's a qualification. It uses the same language as the qualifications clause in Article I. Remember what those cases are about, though, particularly U.S. term limits, is about adding a qualification. And in U.S. term limits and in the previous Powell v. McCormick case in 1969, the Supreme Court recognized that Section 3 of the 14th Amendment was not an additional qualification. It was a qualification within the Constitution. I do want to bring you back to the issue we have at hand. We can go somewhere with this, but I think the issue insofar as what we're talking about now is really a question of whether the challenge statute does that. And that's the claim that's made. Does the challenge statute in and of itself assert Congress's power? That hasn't even been reached here. Whether the judge himself does it is another question. I don't know what we do as courts if we don't resolve controversies as to whether we do or do not. But that issue has not been forced before us since 1872. And this judge said that there is a provision to that statute. That clear language in the Constitution in 1862, that disability was just taken out. So address that aspect of it. Obviously, we think that's wrong, Your Honor. And the reason we think it's wrong is, first of all, if you're just going to talk about plain text, you've got to start with the language of the 14th Amendment, the language of the 1872 statute. The two of those were one is intended, the second is intended to act upon the first. That much is clear. They were ratified and passed respectively within four years of one another. And so the starting point is all the parties agree here, and the judge said this, that the 14th Amendment language, which is, quote, shall have engaged in insurrection, close quote, that that is in the future perfect tense, which means that it applies to all persons, present and future, who engage in insurrection. And that squares with the legislative history that we cited that shows that Congress rejected language that essentially would have applied this 14th Amendment bar solely to former Confederates. Four years later, we have the 1872 Amnesty Act. That act uses the past tense verb removed, as in removed from, in describing the political disabilities to be removed, namely those disabilities imposed. You mentioned text, and I like the text, I guess we call it textless point of view, but I do think that the importance of context is, should be recognized. I mean, Congress just didn't in 1862 just decide all of a sudden to do this. There's a reason they're doing it. At least, it's pretty obvious. Would you not say? I'm just trying to understand. You get a reading that all of a sudden Congress wants to get rid of all this. What the Constitution is saying on a provision that says you can do it and want to do it prospectively would have to at least consider why would Congress do this anyway? Why would you ever think of, well, this is an individual who's going against the United States. Why would you now allow them? And the Constitution allows them to do them in instances, but the question is the context of it. And we talked about that, Your Honor, and the context, as we pointed out, is that what Congress was doing is having to pass private bill after private bill with hundreds of names essentially to grant amnesty. And finally, they came up with this omnibus bill, but I think Your Honor's point is absolutely well taken. And that's why I would say what we say in the issue of both context and history accords with logic and common sense, which it accounts for the idea. In other words, no future, no prospective amnesty accounts for the idea that Congress, just seven years after the end of the Civil War, just four years after the ratification of the 14th Amendment, would not choose to exclude, as we all concede they did, the Confederate bigwigs like Jefferson Davis while at the same time providing a blanket amnesty for some as yet unborn person who later decides to do precisely what Jefferson Davis did. That defies logic and common sense, and it doesn't square with the context, the history, or the legislative history, and it doesn't square with the language because what's lacking in the language is we would see, I think, parallelism between that 14th Amendment future perfect tense language. Had there been an intention to provide a future amnesty, we would have seen language like amnesty for, quote, all who shall have engaged in insurrection. Or as the Green Court put it last month, the 1872 Act could have said, and I'm quoting now, it removes all future disabilities, disabilities that may be incurred, disabilities that shall be incurred, or the like. In addition to that, Your Honors, we've got a situation where, and again, this goes to the way that the courts in construing language would attempt to construe it in a way that doesn't call the constitutionality of the Act into question. Because the way this court ruled essentially renders the Section 3 of the 14th Amendment a dead letter by saying that it was for prospective amnesties, and Congress said they cannot do that. You simply cannot amend the Constitution through a vote in Congress, and that's essentially where the district court's opinion leaves us, and it leaves us with this as a constitutional dead letter. So, I want to, at this point, ask my colleagues to redirect any questions to you now, because I think that point you're making is, you made it pretty well at this point. So, Judge Richardson, Judge Hyde, anything further? So, we will give you, you have some time to rebuttal. I appreciate that, Your Honor. Mr. Buck? It's been some time since I've seen you, Mr. Buck. Pleasure to see you. You're looking well. Yes, we go back a few years, don't we? I may have pleased the court. Of course, Representative Cawthorn vigorously denies that he ever engaged in insurrection or rebellion against the United States, the country he loves, but this is not about the facts. This is about the law. This is about whether there are valid claims being made under Section 3 against him, can they be made by these proposed interveners, and whether or not the procedures that determine this comport with the Constitution. Now, they conflate the January intervention and the March intervention. Just a moment on the intervention. Those are completely different events, have nothing to do with each other. Cawthorn was running in the 13th Congressional District, the January intervention, and the challenges were made by the— Let me out on that part. Okay, we start out, there is a challenge made in January against Mr. Cawthorn. Running in the 13th Congressional District. 13th District. Then, of course, North Carolina goes through an iteration in terms of redistricting as a state, should be a state, because we don't know what district it's going to be. Ultimately, it determines they are no longer in the district Mr. Cawthorn is in now. He's not in 13 anymore. By the way, you don't have to live in the district to be a Congressman. He could be outside, live outside, and still run in 13. He just didn't want to run in the 13 that was there. But that's neither here nor there. My point, my question is, if the district court, and I think they correctly got it, says the challenges at that point, when they no longer live in that district because the statute says it, they don't have standing. But the basis of his action, Mr. Cawthorn's action in the federal court, was based on their initial action in January. When that went away, where is his standing? His challenge was made not to the interveners, but to the North Carolina State Election Board to enjoin them. I want to be clear in what I'm saying. You are saying, essentially, the challenges didn't even need to make a challenge. He could have walked into court in January with nothing done, filed it in federal, and challenged the State Board of Elections under this statute just to say, I want to do that, because it made no difference. Well, it only made a difference on whether or not there was a pending challenge to this candidacy. The January challenge was deemed by the North Carolina State Election Board as invalid, and therefore they were not going to consider that. When he withdrew from the 13th, he then filed- Well, they did, but it became invalid because the challengers no longer lived in the district of which he was in. Well, at least one of them did, but that was irrelevant, because the challenge was to his candidacy in the 13th district. It wasn't to him, like, no matter what he ran for. It was to him, as a candidate, having filed for the 13th district. But he remained a candidate in the 13th district until he withdrew and went into the 11th. Yes, he withdrew, and then he, in the timeframe allowed, and then refiled, now in the 11th. Then the March challengers came in and challenged him in the 11th district. It does so happen that one of them was the same, but that didn't matter. That's irrelevant, because the challengers were to his candidacy in particular districts. So, in come the March challengers. Now, he is suing, not the challengers, he is suing the election board. The election board is prepared to process a challenge once there is one that has been filed, and they notify the court that they were going to proceed on his candidacy in the 11th congressional district. The district court then set a hearing and enjoined them from proceeding with respect to those challenges. Now... You do concede, well, I should say, do you concede at this point that the challenges are no longer adequately represented by the state? Yeah. Just want to be clear. Once they didn't take the appeal, yes. But prior to that time, they certainly were. I mean, North Carolina election board defended on all claims. They filed it. Filed it to make a brief that we're not going to expedite anything. I mean, would that indicate some change in circumstance there? The board was enjoined by the state court from pursuing any challenges until the redistricting was completed. So, once the redistricting was completed, the withdrawal occurred, the filing occurred, the challenge occurred, and the district court then stepped in. Yeah. So, as I see the dilemma in intervention is they moved to intervene. The district court denies it on the ground that the state board adequately represents them. They then appeal. The state board then advises it's not going to appeal, at which point it appears that the state board is not adequately representing them. And then the district court turns around and says they moved to intervene too late. I mean, that's the reason the district court gave. It's not this January-March thing you're citing to us. It's that they were too late. And, candidly, I really don't see how that can possibly be right because they filed the notices of renewal. They filed the renewed motion to intervene right after this court remanded to the district court for the express purpose of letting them do that. The January intervention has absolutely nothing to do with the March intervention, nothing. But that's not what the district court said. The district court said you waited too long because you shouldn't have done it because you should have done it on March 5th or something, which I candidly don't understand the district court's rationale on that. He was talking about not the January interveners because that intervention was now void and never was going to be pursued by the North Carolina Election Board. They made that decision. They didn't sue the board and say, hey, I want to pursue my January challenge because I don't want him to run in the 13th district. Well, he's not even running there. He's running in the 11th. And so with respect to the March intervention on the 11th congressional district, as soon as they filed their challenge, of course, the court, the federal court thing was pending. They didn't file a motion to intervene. They didn't file a motion to intervene when they set for hearing. They didn't file a motion to intervene when the decision was pending and was issued later. They didn't file an intervention. When you say they, you're excluding the one person who's a member of both of these groups. She did, in fact, file a motion to intervene twice. She was challenging the first time running in the 13th district. That is the candidacy. You don't file a candidacy. I'm running for everything, okay? So no matter what I, you know, put me on the ballot on everything. No, it's running for a particular office. It's congressmen from the 13th district. That was the candidacy that was being challenged. And that turned into the 11th district because of the changes that were made. The March intervenors didn't file an intervention to appeal. The January did. January, their challenge had been invalidated by the North Carolina election board, and it was to the 13th district, and he's not running there. And they didn't file after the January intervenors filed a motion, a notice of appeal. They didn't file until you remanded. And, of course, they filed it right away. Okay, fine. But look how far we've gone. Isn't that what happened in the Cameron case with the Supreme Court though? I mean, there you had the attorney general trying to intervene, and the court didn't arise until the secretary ceased defending the state law. And Timeless's motion should have been assessed in relation to that point in time. That's what the court said. That goes to the question of adequacy of representation. I am talking about timeliness. That is also required as well. And it was not timely. They sat around. Don't you have to consider timeliness in light of the adequacy of representation? Because if you're there and you're playing along and the state or the board is doing everything they can, you might say, well, I don't need to intervene yet. They're doing a great job. And then all of a sudden the state says, oh, yeah, we're going to stop now. We have to look at timeliness in light of the information about adequacy of representation, not in the abstract. Good question. And at the time they filed their intervention, the time had not yet run for the North Carolina State Election Board to file notice of appeal. So whatever inadequacy of representation arose at that point, which was after the motion to intervene had been filed and denied. So that's an argument that they weren't too late, they were too early? That they should have waited longer? You know, federal judges are pretty smart people, but they can't see into the future. Okay? So he had what was before him. Well, this might even help you because from their perspective, it's not just that the state has now announced they're not going to appeal. From their perspective, the problem arose the moment the state said it was going to make no effort whatsoever to obtain a stay or to expedite an appeal, which from their perspective is no good because it takes too long. If the state had appealed on the regular timeline and not moved to expedite the appeal, this court would not hear argument until September at the earliest and issue a decision probably in December at the earliest, at which point the election is over. So from the intervener's perspective, why isn't that enough to say the state is no longer adequately representing what we want? Because even if they appeal, which by the way, they've given no sign that they're going to, but even if they do, they're going to make no effort to push this along in a way to get us actual relief that we're seeking. You know, and that's a good question about the stay request, which became obvious that they were not going to pursue that. That's not when they intervened. They intervened when this court remanded for the purposes of allowing them to file a motion to intervene. Yeah, when you guys gave them the big cue and the authority. Right. Well, right. The moment the notice of appeal was filed, they couldn't have moved to intervene because of the jurisdiction. Exactly. So why did the January interveners appeal in order to deny the March interveners the ability to intervene? All right. So, again, now. So can we go to the next question, which is let's get past the intervention. Talk to me for a second about standing here in light of Summers and this idea that a procedural right, I mean, you work in the election space a lot more than we do. There's a procedural right to challenge. And if we think about, you know, Summers and the law and Spokio, a procedural right alone doesn't get you there. You've got to have a concrete right on the back end of it. Help me understand why that doesn't mean the interveners lack standing. You have to have a concrete and particularized injury. So it's not enough to even have a concrete one. In other words, it's like you're building that this case involves that they're going to take down. Okay? In other words, it's something peculiar to you, not to everyone. And here bringing a challenge and prosecuting it is a right that is shared by every voter in the district, and as to wherever they live in the districts of every voter in the state. And furthermore, the injunction doesn't prevent them from filing those challenges, only an invalid challenge, and they have no right surely to litigate an invalid under the Constitution or federal law, an invalid challenge. Now, furthermore, they have no private cause of action. And you all have – You keep saying that. I don't understand. You are the plaintiff in the federal court. They don't need a private cause of action. You're the one who needs the cause of action. Why do they need a cause of action? Because they're pursuing a claim that they want the state to enforce, which is the claim that he's disqualified under Section 3. And the dichotomy is exactly described in the Armstrong case. Exactly. And that's where the court held first. The supremacy clause does not provide a cause of action for private individuals to enforce against other private individuals constitutional provisions. Congress has to provide it. Right. Okay? And then on page 327, the court discussed the dichotomy that if it's the state pursuing you, then you can defend under the Constitution and federal law, including – from a federal court to enjoin the state from violating your rights under the Constitution and the federal law. That's exactly what we've done here. We want them to be precluded from enforcing an invalid Section 3 claim and one that's in violation of the Amnesty Act. All right? Why do you need a federal cause of action to bring a state administrative challenge? I'm not sure I understand your question. You're challenging the state administrative procedure here. Why do you need to bring a federal cause of action to do that? Because this proceeding violates our constitutional rights. I mean, we have two whole causes of action. Did you bring it in state court? I'm sorry? Did you bring it in state court? Well, we could. You can bring federal claims in state court. I understand that. You can bring a state claim in federal court. It's a lot tougher to bring state claims in federal court, you know? And you all don't want to hear all those, you know? And so anyway, the dichotomy exists that you can always defend even seeking an injunction against the state for violating your constitutional or federal law rights. That's what Cawthorne has done here. But they don't have trying to enforce the 13th Amendment against Cawthorne. They don't have a private cause of action. Look, the Griffin case in 1869. That's where I'm trying to understand. I do need some clarification on this. Cawthorne needs the federal cause of action, not the challenges. Challenges do not need a federal cause of action to file a state administrative challenge. So Cawthorne is the one who's bringing the challenge in the federal court. What is his private right of action to do so? Well, the challenges are claiming a private cause of action. I see what the challenge is doing. I want to know what Cawthorne's rights are. He claims, is it under Section 1983? Well, yes, he's asserted it. So then tell me Section 1983 in and of itself has no substantive right to bring an action. Of course not. It does? You can bring independently just under Section 1983 and nothing else? No, you have to assert an appropriate claim. That's what we're saying. What is the federal cause of action that he needs to bring under Section 1983? Enforcing Section 3 against him by the state violates the Section 3 itself and violates the Amnesty Act. Judge Richardson raised this earlier. I totally understand that to the extent he's arguing a First Amendment violation, a due process violation, probably in Article I, Section 3, all of those, I get that he can totally do that under 1983. What's less clear to me is that he has a private right of action to enforce the Amnesty Act under Section 1983. There's a whole area of Supreme Court doctrine that you've not briefed at all that says not every federal statute is privately enforceable under Section 1983. There's like a three-factor test that's analogous to the private right of action inquiry. And there's been no briefing, and I saw nothing by the district court to even consider the question of whether the 1872 Act creates a right that is enforceable under 1983. Justice Scalia in the Armstrong case explains this crystal clear on page 326. But wait, your view is that you think Armstrong is saying that every single federal statute on earth can be enforced through an injunction under 1983? Only against the state, only against the state, if the state is threatening to violate your right, not to enforce it like, you know, throw somebody out of Congress because they're less than 25, okay? No. If the state is threatening to violate your right under the Constitution or federal law, you can either defend or sue. You're suing Armstrong for that proposition? Absolutely, 100%. Best authority for that proposition. So trying to do another thing, I understand that you brought four claims, and I emphasize because it seems to me that you led with the First Amendment and due process claims. That seemed to me that the primary focus of your presentation in the district court was those constitutional claims. And then the district court decides this case based on the Amnesty Act. And I will say, reading the district court opinion, I sense a really weird disconnect. Because when it's talking about Representative Cochran's standing and when it's talking about why this case is ripe, it's talking about the constitutional violations you allege, but then it grants relief based on the statute, which wasn't mentioned. I mean, I guess let me take a couple steps back. Do you agree with me that under Los Angeles v. Lyons and other cases, we have to do standing claim by claim? Just because you have standing to bring one claim doesn't mean you have standing to bring another. Of course. Okay. I will say this. When I read the district court's opinion, I don't see that acknowledged because, again, when the district court concludes the case is ripe and that you have standing, it talks about the First Amendment. But then when it rules for you, it does it based on the Amnesty Act. And what am I supposed to do with that apparent disconnect and how the district court analyzed that? Well, you know, I assume that you would say he obviously didn't get everything right in his opinion, but that even though he didn't analyze the question, we're obligated to whether or not the Cochran has standing to bring a claim under Section 3. And, you know, it's not been raised, but, you know, you're obligated to do it or the Amnesty Act. And you would find that he does. So, I mean… That depends. Maybe it will help me understand. What exactly do you think the Amnesty Act prohibits North Carolina or any other state from doing? Does it forbid them from actually purporting to disqualify Representative Cochran? Or does it purport to go further and forbid them from even considering whether possibly to disqualify? So, when we're talking about the First Amendment, I sort of understand your argument to be the very process that this law contemplates is itself the First Amendment. Right, right. So, that's a challenge to that. But it's less clear to me both in your briefing and the district court what exactly you conceive of the violation of the Amnesty Act being. Is the violation actually purporting to disqualify him or is the violation even considering whether to disqualify? Yeah, you can't consider whether to disqualify him. You can't do it at all. I mean, you… And, of course, the problem… One of the problems with this process is you can't, you know, bring your constitutional claims before the ALJ or even the board. You know? And we have claims, number one, that the process itself violates our constitutional rights. And we can't bring that claim until the process is completed and go to state court. And then, of course, in the meantime, they are processing another, an inbound claim, which is whether or not they can disqualify Cawthorne under Section 3. And there are numerous reasons why they can't, including the Amnesty Act as applicable to them. How is that a plausible reading of the text of the Amnesty Act? I mean, get inside this perspective, retrospective. How is that? I mean, and your argument is, you know, maybe it doesn't make sense, but the text says what the text says. Believe you me, I think it makes sense. I understand. No, but I understand your argument to be fundamentally a textual argument about the text. So how is the argument that the process itself is a violation of the statute? Your argument seems – you said imposed, disqualified. I guess if we're going to read the text of the statute incredibly literally, which maybe we have to, I don't see how the statute forbids them from asking the question as much as it forbids them from purporting to actually decide to disqualify. Well, that would make – if that would be the case, that makes their process even worse. So a challenger can say, well, he should be disqualified because he's black. And, you know, I mean – What we would normally do is we would assume that the state board is not going to apply their process in an obviously illegal and unconstitutional way rather than go to federal court and get an injunction forbidding the state board from doing it. That would be nice, but unfortunately history doesn't prove that to be the case, Your Honor. It's amazing how many times states get enjoined from doing things that are patently, obviously ridiculous, all right, and unconstitutional. Let me understand the point you're making here, and it is – as I hear you, let's say if there was no 1872 Amnesty Act, and the Constitution says what it says there in Section 3, the third section of the 14th Amendment, which has these political disabilities, you are saying a state at that point, if those political disabilities exist, can do nothing. You've got to wait until Congress then says whether or not you're qualified. Well, actually we do have such an argument. That's the Article I argument, right? No, but that's one of them. The one I wanted to make is a different one, and that is that North Carolina permits a candidate to be removed if he will not qualify to take office on January 3rd. Now, so the question is can it be determined today that he cannot take office on January 3rd? The answer is no. It cannot be determined because the last sentence of Section 3 is, but Congress may, by a vote of two-thirds of each House, remove such disability. That can happen tomorrow, next month, in September, after the election, on January 3rd. Okay? So we cannot determine today that he is eligible then. Now, that's different than like age. Okay? Somebody can run for office as long as they're 25 by January 3rd. All right? Well, their birthday can be after, you know, after the primary, after the general election could be on January 6th or January 2nd. I'm sorry. So he can demonstrate his eligibility to take office because an event will occur that makes him qualified to take office. How can you determine today that Congress will not lift this disability and remove him from candidacy because you are projecting that Congress will not lift his disability up until January 3rd? That's impossibility. This is an example of a disqualification that cannot be determined until January 3rd, under Section 3, specifically. And that, just so I understand that argument, that argument even assumes that a state or a federal judge can determine the qualifications of the members of Congress. I don't think that a federal judge or anyone can determine the qualifications of Congress under Article I, Section 5. I understand. But what I'm saying is I'm understanding what you're saying. But these are two separate arguments. Even if you rejected your argument under Article I that a federal court or a state agency has no ability to determine qualifications, if you rejected that, you still are making this as sort of an alternative argument that a state who was judging the qualifications can't do so now with respect to a candidate. Right. And so since it cannot be determined now that he will be ineligible to take office on January 3rd, how can it be that he's disqualified as a candidate now? He can't. Constitutionally, he can't. Turning to your Article I argument for a minute, to the extent we understand Article I to bar anyone other than the House to judge the qualifications of its members, can you talk to us for just a minute about how we distinguish between the manner and means of an election, which is a permissible state grounds, and how we determine qualifications? How would we think about deciding what counts as a qualification and what counts as a manner and means which may be done by the state? Well, the real guidance is the U.S. term limits that face the argument that, well, we're just determining the manner because we're imposing term limits. Okay? And the court said, no, that's qualification. Right? And disqualification, phrased as a disqualification, all right, which I accept as a qualification required by the Constitution, does not, you know, that – I'm sorry, I lost my train of thought – but, you know, that's the case, is you can't determine that until January 6th. And then the second sort of point there that I just want to make sure I understand your argument on is your colleague on the other side suggests that whatever Article I says about judging the qualifications of its members, it doesn't apply to candidates. Right? That it's only at members. So judges, federal judges get to decide the qualifications of a candidate. Other than, you know, Cook and term limits themselves, which seem to reject that argument, is there anything else that I would want to think about in thinking about that piece of the sort of steps on the Article I argument? I don't think under Section 5 that anyone can determine the qualifications of a candidate – I'm sorry, of a member of the House. Those qualifications – Other than the House itself. Yes. All of them are take office. Every one of them is take office. It's not be a candidate. Does the Constitution determine the qualifications? Yes, the Constitution has qualifications. So if you don't meet those qualifications and you decide you want to run for office at 12 years old, let's say, or something like that, the state can't do anything. You've got to wait until Congress says it. Is that right? That's what the Constitution says. Look, I can't help what the Constitution says. But there's no case that says it. There's a connection between Article I and this very Section of the 14th Amendment, which is in the Constitution. It sets forth political disabilities. It doesn't say a word about before Congress, if once Congress determines these things exist. So that whole question there is still up in the air. Now, we can make it so that anybody can come in with any kind of problem, and a state can't do it. It's amazing in cases, some cases, we'll argue like crazy about what the right states have. Now we're saying the federal courts have it. Now you're saying Congress has it in this particular instance. And yet it's only in this limited instance here we're talking about a specific provision in the Constitution that creates a political disability. And you say you can do nothing about it if that disability exists. You have to go ahead on state and just let people file in your state and run, and then wait until we go to Congress and let Congress do it. Is that the answer? And there's two reasons for that. Number one, it's amazing how many things we let the voters decide. Amazing. Explicit. Is any other case that says that either that provision or any other provision in the Constitution, if it's not met, you can't do a thing in the world about it in court. You can't do a thing in the world about a state. You've got to wait until Congress deals with it. And my second argument is… The question is, is there any authority that cites that? No, I don't think this is a… How about Jones v. Montague? Well, you'll have to remind me of that. It says the House is, quote, the sole judge of the qualifications of its members, end quote. I disagree with that statement. That's not my question. My question is not about the qualifications of members. My question goes to when there are explicit indications, political disabilities in the United States Constitution, political qualifications in the Constitution, if on its face it's not met, you say a court cannot say it's not met. You've got to wait until it gets to Congress. I didn't say that. What I said is… Well, then, thank you. Section 3… And I'm glad you're clarifying. Well, let me tell you what my clarification is. Please do. Thank you. My clarification is that under Section 3 it says no person shall be a representative. That cannot be determined until the time that they show up on January 3rd, because any time prior to that they could become disqualified. Read the rest of it. No person shall be a representative. Yeah. No person, pertinent to this, no person shall be a representative in Congress. And that cannot be determined. Who what? What's the basis? Who having previously taken an oath and then engages in insurrection and the disability has not been removed, which is the last thing. And you're saying if every one of those facts are established, a state or a court can do absolutely nothing about it. You have to let that individual just go ahead and run until he gets up in Congress and when he gets ready to speak, then we'll deal with it. That's the way this works, Your Honor. I don't think anyone believes that. Well, I shouldn't say anyone. A lot of people believe it. I think there's no authority that makes it that explicit. Your Honor, a lot of people disagree with me, and I respect them. Not everybody. We're all in good company. We've known each other a long time. Go back to Jones for a second. What else could it mean to be the sole judge of qualifications other than to be the sole judge? Well, it certainly doesn't mean that a state can remove somebody from the ballot, prevent his election, which results in preventing him from presenting himself to Congress for them to judge his qualification. And, you know, voters can decide a lot of questions. And in a democracy and where we have the right to vote and we have the First Amendment, we leave a lot of things to the voters. Does your position necessarily entail that states can't adjudicate residency challenges? Well, they can for their own offices. No, but for Congress. No. Wait, wait, wait, wait, wait. There is no residency requirement for Congress. Well, you have to have been – sorry, I was conflating. You have to be a citizen of the United States. And, wait, you have to be a resident of the state in question, at least for the House and the Senate or both, right? I know House members don't have to live in their districts. I agree with you there. But you do have to be a resident of the state you're being elected for, right? Yeah. Can the state of North Carolina decide you will not appear on the ballot because you are not a resident of North Carolina? So, somebody from South Carolina can file for any seat they want to in North Carolina, never have to live that day in their life, and there's nothing North Carolina can do about it or court until it goes to Congress. Congress can do something about it, but the voters can do something about it. Come on. You think somebody is going to run from South Carolina and get elected in North Carolina? Yes. Yes. I would not say that about the voters of North Carolina. He might say that about the voters of North Carolina, but I know that they're a smart group. I mean, residency, even though it's legal to run for Congress, even though you don't live in the district but in the state, it's a huge political issue. I mean, come on. These things are decided by the voters every day, all day long. I want to bring this back to the legal issues we're here. And give you an additional time from the judges. Do you have further? Can I talk about the Amnesty Act? I do. I have a question. So, assume for a minute that I disagree with you on the Amnesty Act, and I don't want to talk about it, but if you prevail on this idea that Article I makes the House the sole judge of the qualifications of its members, is that a jurisdictional problem that we, as the Fourth Circuit or the district court, lacks jurisdiction to be a judge of qualifications? That we lack the authority to do that? And if, and let me walk through what that means, right, that if we lack that authority to do it, we also lack the authority to determine whether the 1872 Act is good or bad for your client. That we simply lack the authority to judge the qualifications of your client. Period. The legal question regarding the last sentence of Section 3 is, did Congress, by the vote of two-thirds of each House, remove such disability? And who is the judge of that question? The… The House. Well… The House is the judge, because that is a qualification. But not the election board. That's who we have sued. They have no authority… I'm not asking you that question. What I'm asking you is a different question, right? You're trying to avoid, I think, the consequence of your argument, right? If the House is the sole judge of qualifications, and if Section 3 of the 14th Amendment is a qualification, then the only entity that can determine what the 1872 Act's effect is, is the House. No, because then you would be… You know, this becomes circular. This is how it answers, right? This is circular. You would be allowing… If your argument was valid, and imposing a disability under Section 3 violates Section 3 and the amnesty act. But you can't enforce that. See, we're back to the private cause of action, I think. You can't enforce that. The federal court can't enforce that against a state. Well, then the state can remove them, and Section 3 and all other qualifications requirements under the Constitution are dead letters. No, okay. So, that's a different point. My point is not that we lack the authority to enjoin the state board, right? We plainly lack the authority to enjoin the state board, because if they are going to decide the qualifications, they're violating Article 1, right? So, we can do that, but what we can't decide is whether your client is qualified or not. And that would be the question… That would be resolving the 1872 Amnesty Act. But see, there's two parts to the Section 3 as far as judging qualifications. One is, is there a legally valid claim that can be made? The other is, factually, did he engage in insurrection or rebellion? I'm not asking you to decide the second one. And I don't want to decide it. Okay. What I'm asking you to decide is the first one, and that is, is it a legally valid claim? And look, I can't even get the ALJ to decide that or even the election board to decide that, you know? And so, you know, courts do this all the time. Does the state a cause of action? Is it a legally valid claim, even though we assume the facts, and the facts, you would assume, is that he engaged in insurrection or rebellion? But legally, can that section disability be imposed upon him? And that's the legal question that you can decide. Absolutely. And if you decide, I mean, if this says, no person shall be a representative, let's say, something obvious that is Jewish, I mean, you don't have to decide whether or not the person is Jewish. What you can decide is, that is unconstitutional to impose that on a person. All right? Assuming the fact. All right? And so, now, the, now, first, the Amnesty Act of 1872, and Section 3 is both perspective and retrospective in its application. The final sentence, Congress may, by a vote of two-thirds of each house, remove such disability. In other words, remove either retroactive or perspective, because of the such disability is what's imposed by Section 3, which is both retroactive and perspective. Unless they say that explicitly, that they're limiting it to only perspective, or only retroactive, then it has to be logically assumed, they mean the disability Section 3 imposes, which is both retrospective and prospective. What canon of construction have you cited for that? In a, I'm sorry? What canon of construction have you cited for that? Well. I mean, typically, you have to be explicit. I mean, you take Congress for what it actually says in there. That is referring. When you use a past tense word in it, you tend to look at, well, they're talking about things that have already happened. But they are referring to the disability. What is the disability under Section 3? It's both retroactive. The past tense word, removed. Oh. Well, of course, that goes to, and that's a separate question. But logically, if Congress wants to limit its amnesty to only retrospective, they would use such a word that would say that. And in 1896, they did it. They said disability imposed by Section 3 heretofore incurred is removed. Now, if the word removed and imposed was only retroactive, why in the heck did Congress say heretofore incurred? That is because they wanted it only to be retroactive with respect to the exceptions under the 1872 Act that would continue on, respectively. So you're not arguing, wait, the 1873 Act sheds light on the meaning of the 1872, because I can cite multiple Supreme Court decisions for the proposition that subsequent post-enactment legislative history is, I think Justice Scalia said, a contradiction in terms and not a valid form of statutory interpretation. I'm not talking about how you interpret Section 3. Everybody agrees with that. No, but there's a flavor to your argument that in 1893 they shed light on what they meant in 1872. And I think the Supreme Court has said we don't do that. No, I think it was more precise than that. I said that when Congress wants to only retroactively lift a disability, they know how to do that. I think maybe we're just talking in circles because that to me is arguing that something Congress did in 1893 sheds light on what they did in 1872. If imposed – my argument was if imposed is only retroactive, and if removed is only retroactive, then why did they say in the 1896 Act heretofore incurred? See, that's saying only retroactive. But if the other two words accomplish that, well, that would be gross surplusage. And so, obviously, it consisted with the disability imposed by the Section 3, which is both prospective and retrospective. In 1896, they only wanted to lift the disability retrospectively. And that's why they used the words heretofore incurred. One other point. Imposed, they say, is a – Mr. Butt, we're coming at the end here. Yes. Out of a courtesy, I'm going to give you a minute to wrap up unless the judges have further questions. Thank you very much. They say imposed is a past tense verb where it says the disability imposed by. And, of course, removed, we would all agree, is a verb, right? However, they're wrong. It's not a past tense verb. It's a past participle that acts as an adjective to what disability are we talking about. And, you know, it's not a disability because you're a convicted felon. No. It's a disability imposed by Section 3. So it's an adjective to the word disability. If they were both verbs, where is the and? Where's the and? It says that all disabilities imposed by the third section are hereby removed. There are two alleged verbs. Where's the and here? Why doesn't it say that all political disabilities imposed by Section 3 and are hereby removed? If you have two verbs in a sentence, you have to separate them by an or, an and, or something that signals that those words are being used as verbs. Removed isn't used as a verb. Imposed is not. Thank you. Thank you, Mr. Miller. Mr. Miller, you have a few minutes left, even though you did greatly exceed. But that's our fault. Thank you. Just to pick up on that point about removed, I think when you say are hereby removed, removed is a verb. But more importantly, no one, not the district court, not Mr. Bob, has explained how, in the sense of removed, because of its prefix re, indicates that the disability has to be present before it can be removed, i.e., taken away, which is the definition of removed. No one has offered an explanation for how something can be removed before it is imposed or how the statute purports to pre-remove from the future insurrections. With regard to statements that were stated several times by my colleague, that these are things that are typically left for the voters, I think what that fails to recognize is we are talking, with respect to Section 3, about something that is in the Constitution. And the fact of the matter is that Congress was not leaving it to the voters, and that argument is very ahistorical. That's precisely what Section 3 was intended to do. Voters in the former Confederacy wanted to be represented by insurrectionists. North Carolina even tried to send its Confederate governor, Zebulon Vance, to Congress. But our nation adopted the 14th Amendment in Section 3 specifically that mandates that this small slice of humanity, insurrectionists who had previously taken the oath, are disqualified from serving, no matter how much the voters prefer them. So the Constitution doesn't allow the voters to send teenagers or Chileans to Congress, and it doesn't allow them to send insurrectionists who have taken the oath either. I would note, with respect to the qualifications argument, that it is also ahistorical to say that this is purely for Congress, because that cannot be squared with the 1868 Act that readmitted North Carolina to representation in Congress, which provided as a condition that, quote, no person prohibited from holding office under the United States or under any state by Section 3 of the proposed amendment to the Constitution of the United States, known as Article 14, shall be deemed eligible to any office in either of said states unless relieved from disability as provided in said amendment. But those are state offices, right? That's saying you can't be a North Carolina governor if you would otherwise be precluded by Section 3 of the 14th Amendment. Your Honor, it says from holding any office under the United States or under any state. Right, but what it's saying is that they're trying to extend this to the state government, right? That makes perfect sense to me. That doesn't give them the authority to become an alternative judge for the qualifications of members of the House. I disagree, Your Honor. Section 3 applies to state offices by its terms. And, in fact, and again, this gets to the sort of ahistorical aspect of all of this. North Carolina and the North Carolina Supreme Court in 1869 disqualified from holding office an individual who had done nothing more than serve as a sheriff in a North Carolina county, Moore County, under the Confederacy, and he was disqualified under Section 3 of the 14th Amendment. I don't know that particular story, but who disqualified him? He was disqualified by the North Carolina Supreme Court, determined that he could not hold that office, a case that's called Worthy v. Martin, 1869. Does North Carolina Constitution have a statute that says this General Assembly is only judged, the qualifications of members of the General Assembly are only judged by members of the General Assembly? It does not, Your Honor, but it also, it really begs the question of why North Carolina is required to adhere to a condition. Two weeks before the ratification of the 14th Amendment on July 9th, 1868, if Congress is simply saying, don't worry about Section 3, leave that to us, there's no point in putting it in here, and this then becomes the surplusage in the context of readmitting North Carolina to representation in Congress. With my remaining time, if I may, I'd like to address quickly two issues. One issue is the prospect of remand. In our view, remand here is neither necessary or appropriate. In the Leek case that was cited by Cawthorn here, in that case the State Board of Elections was also the defendant. This court said that it would determine the alternative grounds that were advanced in that case without remand. I think this is particularly appropriate where there's nothing factual to be determined, and remand would simply delay the ultimate resolution. This court has also decided not to remand in election-related circumstances where delay could affect the election, and we cited those cases as well. The last issue I'd like to address concerns the issue of mootness. Obviously, what's happening in North Carolina is happening in a very fluid way. May 17th is an initial primary, depending on what happens then. There could be another primary in July, followed then by the general election, obviously, in November. No matter what happens, even if Mr. Cawthorn were to lose in the primary, we don't think that renders this case moot, and here's why. It fits into that category of capable of repetition, yet evading review. You see that in the leading case, which is Anderson v. Celebres, where the Supreme Court didn't rule until 1983 in a case concerning John Anderson's 1980 third-party presidential candidacy. We have to answer that question in this case. Pardon? We have to answer that question right now as to what happens if Mr. Cawthorn loses. I'm just saying things are happening quickly, and what I would— I don't think we're going to go—we may not quite go there, so let's kind of—I think we've got enough to handle this case as it is. Well, I understand, Your Honor, and I would just say that the Supreme Court in the Storer v. Brown case—this is 415 U.S. 724 at 737 in Note 8— and what they specifically said is the construction of the statute, an understanding of its operation, and possible constitutional limits on its application will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election has heard. We were subjected to this, obviously, in the context of the intervention motion, which is very typical of elections litigation when it's always too early until suddenly it's too late, and we don't want that circumstance to prevail here, and if this case is remanded, we're just going to be back and forth on a yo-yo here before this then can be determined, and as Judge Richardson pointed out, I believe, we get to the election and things are not decided in any kind of timely fashion. Thank you, Your Honor. Thank you, Mr. Miller. Judge Richardson, anything further? Everybody at rest here, I think we've exhausted this issue quite much, much more than usual. Don't expect this when you come to the Fourth Circuit the next time that you get extra time, but you had a very willing panel and a very engaging group of lawyers here. You know the tradition of the Fourth Circuit. Typically, we walk down and shake your hand, but this is COVID season, and that is not going to happen. There may be a time in the future, and we'll hope it's going to be maybe as early as when we come back in September, but know that you have our good wishes out there. So the court will be adjourned until tomorrow morning at 930. Court is adjourned until tomorrow morning. God save the United States and this honorable court.
judges: James Andrew Wynn, Julius N. Richardson, Toby J. Heytens